IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 17-cr-00373-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. THOMAS DAVID SIDES,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on defendant Thomas David Sides' Motion for Compassionate Release [Docket No. 63]. On May 1, 2020, Mr. Sides sent a letter to the Court seeking compassionate release under "[t]he new law." Docket No. 59 at 2. Construing this motion as a motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), the Court appointed counsel under the Criminal Justice Act ("CJA"), and CJA counsel entered an appearance on May 5, 2020. Docket No. 62. On June 16, 2020, defendant filed the instant motion through counsel. Docket No. 63. The government responded on June 29, 2020, Docket No. 69, to which Mr. Sides replied on July 6, 2020. Docket No. 73.

**I. BACKGROUND**

On February 15, 2018, Mr. Sides pled guilty to one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) and one count of possession of a firearm during and in furtherance of a

controlled substance crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Docket No. 12; Docket No. 32.  On August 9, 2018, the Court sentenced Mr. Sides to a total 108 months imprisonment for the two charges.  Docket No. 55.  Mr. Sides is currently incarcerated at FCI Terminal Island in San Pedro, California, which is a "low-security facility that specializes in housing prisoners who need long-term medical or mental health care."  Docket No. 63 at 2.  Mr. Sides represents that FCI Terminal Island currently houses 1,042 inmates, despite having an inmate capacity of 779.  Docket No. 63 at 2.  According to Mr. Sides, "[o]vercrowding and a failure to ensure social distancing or isolation of infected inmates within the prison has created an ideal environment for the spread of the virus, while hosting a uniquely vulnerable inmate population."  *Id.*  Mr. Sides' projected release date is September 2025.  *Id.* at 4.

      Mr. Sides requests that he be granted compassionate release and placed on home confinement in a private nursing home, to be approved by the United States Probation Office, due to health concerns related to the coronavirus (COVID-19) pandemic.  *Id.* at 11.  Specifically, Mr. Sides states that he "currently suffers from a significant number of serious medical conditions," including a tumor in his lung, hypertension, obesity, a crushed right femoral head, a lesion on his liver, fluid on his spine, and severe narrowing of his lower spine and right hip joint.  *Id.* at 1.  He indicates that he is confined to a wheel chair and is unable to dress or bathe himself.  *Id.* at 1-2.  He takes oxycodone/acetaminophen, morphine, and pregabalin to treat his pain, but "experiences significant pain even with these powerful medications."  *Id.*

According to the BOP website, as of August 10, 2020, there are currently three inmates and six staff members at FCI Terminal Island who are currently positive for COVID-19.  *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed August 10, 2020).  Six hundred and thirty-nine inmates, as well as seventeen staff members, have recovered from COVID-19.  *Id.*  According to the BOP, ten inmates at FCI Terminate Island have died from COVID-19.  *Id.*

## III. ANALYSIS

Section 3582(c)(1)(A) permits a district court to "reduce [a] term of imprisonment" in certain circumstances "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights[1] to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Specifically, a court may order an inmate's release if the court finds that (1) "extraordinary and compelling reasons warrant such a reduction; . . . and that [(2)] such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" as set out in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).  The government argues that Mr. Sides has not established that extraordinary and compelling reasons support a sentence reduction and has not met his burden of demonstrating that a reduction of sentence is consistent with the § 3553(a) factors.  Docket No. 69 at 8.

---

[1] The government does not dispute that Mr. Sides has met this exhaustion requirement.  Docket No. 69 at 7 n.2.

3

**A.  Extraordinary and Compelling Reasons Warranting Release**

The Sentencing Commission has identified four categories of "extraordinary and compelling" reasons that may warrant a sentence reduction under the First Step Act:

(A)   Medical Condition of the Defendant.–

>  (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> 
>  (ii)  The defendant is–
> 
> > (I)   suffering from a serious physical or medical condition,
> > 
> > (II)   suffering from a serious functional or cognitive impairment, or
> > 
> > (III)   experiencing deteriorating physical or mental health because of the aging process,
> 
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   Age of the Defendant.– The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   Family Circumstances.–

>  (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> 
>  (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   Other Reasons.– As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1.  Mr. Sides argues that he is entitled to release under subsection (A) because his medical conditions, from which he is not expected to recover, substantially diminish his ability to provide self-care.  Docket No. 63 at 5.  In the alternative, he argues that he is entitled to release under subsection (D), which allows for release pursuant to extraordinary or compelling reasons, other than those set out in subsections (A)-(C), "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D); Docket No. 63 at 8.

The medical evidence submitted by Mr. Sides demonstrates that he has used a wheelchair since 2004.  Docket No. 63-2 at 2; *see also* Docket No. 69-2 at 86.  In 2018, Mr. Sides experienced pain and difficulty transferring himself to the toilet.  Docket No. 63-2 at 4.  During a physical exam, Mr. Sides had to be assisted from his wheelchair to a gurney due to immobility.  *Id.*  A total hip replacement ("THR") was recommended due to Mr. Sides' immobility.  *Id.*; *see also id.* at 5 (recommending "THR at [right] hip (very advanced [osteoarthritis] so despite [age] and weight THR recommended for severe pain/immobility)"); *see also* Docket No. 69-2 at 80 (a doctor opining that there is "no reasonable alternative option" to treat Mr. Sides' hip condition).

In addition, medical records from February 2, 2019 indicate that Mr. Sides "ha[d] trouble [performing] some daily activities [such] as bathing, putting socks on, [putting] underwear [on,] or getting dressed."  Docket No. 63-2 at 10.[2]  On March 22, 2019, Mr.

---

[2] As defense counsel acknowledges, the medical records submitted by Mr. Sides appear to include notations made by Mr. Sides.  *See, e.g.*, Docket No. 63-2 at 10 ("Look they [know] I can't dress or shower but choose not to do anything.").  Counsel

5

Sides was seen by medical staff to treat pain resulting from a fall that Mr. Sides had as he attempted to transfer from the toilet to his wheelchair. *Id.* at 13. On April 17, 2019, Mr. Sides self-reported that he could not bend forward to put on socks or pants and was having difficulty using the toilet. *Id.* at 17. He indicated that he needs assistance with bathing, getting in or out of the tub or the shower, putting on socks and pants, transferring himself to the toilet and cleaning himself after using the toilet. *Id.* He received a score of 3 on the Katz Index of Independence in Activities of Daily Living[3]: he received one point each for (1) being able to move out of his bed or wheelchair unassisted, (2) continence, and (3) being able to feed himself. *Id.* He did not receive points for dressing himself, bathing himself, or being able to use the toilet independently. *Id.*

The government argues that Mr. Sides does not have a "condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover" because medical records obtained from the BOP indicate that Mr. Sides is able to care for himself. Docket No. 69 at 10. Specifically, the government notes that (1) on September 13,

---

states that, "[g]iven the urgency of this motion and the time it would take to request and obtain the records [from] BOP it was deemed necessary to use the records in their current condition." Docket No. 63 at 4 n.3. The government, in response, obtained medical records for the last year from the BOP. *See* Docket No. 69 at 10; Docket No. 69-1 at 10. However, the medical records obtained by the government do not include clean copies of the medical records submitted by Mr. Sides that are older than one year. For this reason, the Court will consider the medical records submitted by Mr. Sides, but will ignore Mr. Sides' handwritten notations.

[3] A score of 6 indicates that the patient is "independent," while a score of 0 indicates that the patient is "very dependent." Docket No.63-2 at 17.

2019, "a provider observed [Mr. Sides] 'remove his pants and shoes, get assessed by the specialist and then put his pants and shoes back on without any assistance from medical staff or the specialist,'" *id.* (quoting Docket No. 69-2 at 43),[4] (2) on April 29, 2020, Mr. Sides "was provided with a tool to help him dress," after which Mr. Sides stated he "had no concerns" and stated that the tool "looked cool," *id.* (quoting Docket No. 69-2 at 28), and (3) a provider observed Mr. Sides walking unassisted to his wheelchair, for approximately four feet, on May 9, 2020. *Id.* (quoting Docket No. 69-2 at 15).

The Court is not convinced by the government's argument that Mr. Sides can provide self care because he was observed on one occasion walking approximately four feet to his wheelchair before getting dressed in the morning and because he stated that he had "no concerns" when he was given a tool to dress himself. That Mr. Sides was able to get himself from his bed to his wheelchair one time does not contradict the significant medical record evidence that Mr. Sides needs assistance bathing, dressing, and using the toilet. Moreover, the fact that Mr. Sides walked approximately four feet to get into his wheelchair is consistent with his medical records and Mr. Sides' self-reports of his need for assistance, which provide that Mr. Sides does not need assistance moving from his bed to his wheelchair. *See, e.g.*, Docket No. 63-2 at 17. In addition, the fact that Mr. Sides had "no concerns" when he was given a tool to help dress himself does not contradict the record evidence that he cannot dress himself without

---

[4] The Court notes that this was a "late entry" into Mr. Sides' medical file. While the encounter apparently occurred on September 13, 2019, this information was not added to Mr. Sides' medical records until March 17, 2020. Docket No. 69-2 at 43.

assistance, particularly where the record indicates that the tool was to be "provided to [Mr. Sides] as necessary to assist with getting dressed." Docket No. 69-2 at 28. The record does not demonstrate that this tool is always available to Mr. Sides, so as to allow him to dress himself without assistance, and the record does not indicate how often Mr. Sides is able to dress himself with this tool. A conclusory notation that Mr. Sides had "no concerns" when given the assistance tool does not demonstrate that Mr. Sides can independently dress himself.

The Court is also not convinced by the late-added notation in his medical records indicating that Mr. Sides was observed, once, getting dressed without assistance, as this does not contradict the other evidence demonstrating that Mr. Sides has significant mobility issues and needs assistance getting dressed. Mr. Sides' medical records consistently indicate severe and debilitating medical conditions in his right hip and back, *see, e.g.*, Docket No. 69-2 at 205 ("significant stenosis" in back; "marked/end-stage degenerative changes in right hip with a dysmorphic flattened right femoral head, severe bony productive changes"; "advanced multilevel degenerative changes of the spine and end-stage osteoarthritis of the right hip."), and consistently note Mr. Sides' immobility. *See, e.g.*, Docket No. 63-2 at 4.

Courts regularly rely on an inmate's ability to perform activities of daily living ("ADLs") to determine whether the inmate is able to provide self-care. *See, e.g., United States v. Bellamy*, 2019 WL 3340699, at *4 (D. Minn. July 25, 2019) (finding that inmate was eligible for compassionate release where "he need[ed] assistance using the toilet, getting dressed, bathing, transferring to his wheelchair from his bed, using the computer, obtaining meals, doing laundry, and obtaining his medication, among other

8

activities"); *United States v. Handy*, 2020 WL 2041666, at *4 (D. Md. Apr. 28, 2020) (finding that inmate was incapable of providing self-care where the inmate was "always in a wheelchair" when not in his housing unit and "need[ed] help with activities such as breaking up food into small pieces, fetching a meal tray, opening packaging, and clipping toenails due to his right hand being 'completely deformed.'"); *United States v. Korn*, 2020 WL 1808213, at *5-6 (W.D.N.Y. Apr. 9, 2020) (finding that an inmate had failed to demonstrate he had a medical condition precluding him from providing self-care because the inmate could "walk with a cane, dress, bathe, eat, and perform his other activities of daily living independently").  Mr. Sides needs substantial assistance to complete his ADLs, needing assistance to bathe, dress himself, transfer to the toilet, and clean himself after using the toilet.  The Court finds that Mr. Sides has met his burden of demonstrating that he has a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility."  U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).  Accordingly, Mr. Sides has demonstrated that extraordinary and compelling reasons exist warranting compassionate release.  18 U.S.C. § 3582(c)(1)(A).

> **B.   Section 3553(a) Factors**

Even if an inmate has demonstrated that extraordinary and compelling reasons exist warranting release, under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must consider whether compassionate release is appropriate in light of the sentencing factors set out in 18 U.S.C. § 3553(a).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for

the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct ,[and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  "The Court also considers whether Defendant is a danger to the safety of any other person or to the community."  *United States v. Tate*, 2020 WL 3791467, at *5 (C.D. Ill. July 7, 2020) (citing U.S.S.G. § 1B1.13).

Mr. Sides asserts that the § 3553(a) factors weigh in favor of compassionate release.  Docket No. 63 at 9.  He acknowledges that his charges were serious, but argues that his conduct "does not warrant a death sentence which is the likely result given . . . his impaired medical conditions should he remain at FCI Terminal Island."  *Id.* at 9-10.  And while Mr. Sides states that it is "[c]ertainly . . . possible" that he will commit crimes again in the future, he states that this risk is mitigated by his medical conditions and his inability to provide self-care.  *Id.* at 11.

The government, however, points to Mr. Sides' "history as a major drug dealer" and notes that he was afflicted with his debilitating medical conditions when he committed the underlying crimes.  Docket No. 69 at 11.  According to the government, "[t]here is no reason to believe that those conditions would somehow prevent him from posing a danger now."  *Id.*  In addition, the government argues that a reduction in sentence would undermine principles of deterrence, fail to reflect the seriousness of the offenses, promote respect for the law, or provide just punishment.  *Id.*

The Court finds that Mr. Sides has not met his burden of demonstrating that a reduction in sentence is appropriate under § 3553(a).  While Mr. Sides attempts to assure the Court that he will not commit crimes again, the "anything is possible" position taken by Mr. Sides does not inspire confidence that Mr. Sides will not re-

10

offend. Mr. Sides reasons that the risk he will commit additional crimes is "mitigated by [his] chronic medical conditions." Docket No. 63 at 11. However, the presentence report indicates that, at the time of sentencing, Mr. Sides suffered from "some paralysis in his arms [and] major nerve damage in his legs," and that he was confined to a wheelchair due to a 2004 accident. Docket No. 42 at 17, ¶ 62. Thus, it appears that Mr. Sides' medical conditions did not prevent him from committing the crimes for which he is currently incarcerated. In addition, the Court finds that Mr. Sides would pose a danger to himself or others if he were to be released, given that he has used other people to assist him in committing crimes due to his physical limitations. For example, in the underlying offense, Mr. Sides used his fifteen-year-old son to assist him in drug crimes. *See id.* at 6, ¶¶ 15, 17. Moreover, as evidence of his danger to the community, despite his physical limitations, Mr. Sides instructed his son that, "if anyone came to [his] house unwelcomed," to open fire. *Id.*, ¶ 18. Finally, Mr. Sides has served approximately one fourth of his 108-month sentence, which does not sufficiently reflect the gravity of his offenses or promote respect for the law. *See United States v. Woods*, 2020 WL 3452984, at *3 (S.D. Miss. June 24, 2020) ("Further, Woods has only served about a fourth of her sentence. . . . The Court finds that, under these circumstances, a reduction in Woods's sentence would not reflect the gravity of the offense."); *United States v. Schwab*, 2020 WL 3452651, at *1 (E.D. La. June 24, 2020) ("The Court finds that defendant's sentence would not 'reflect the seriousness of the offense' were he

released after serving eighty-two months, or about thirty-four percent, of his term of imprisonment.").[5]

The COVID-19 outbreak at FCI Terminal Island is concerning, with over half of the population having contracted the disease.  However, the BOP indicates that the outbreak is relatively contained, with only three current positive cases of COVID-19. *See* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed August 10, 2020).  While the Court acknowledges that the risk of contracting COVID-19 is always present, the Court does not find that continued placement at FCI Terminal Island constitutes a "death sentence."  *See United States v. Haywood*, 2020 WL 3621309, at *2 (D. Nev. July 2, 2020) (stating that, because "there are currently only six active cases of infected inmates at Terminal Island," this "suggest[s] that the [BOP's COVID-19 response plan] is now working there.").

Having determined that Mr. Sides has failed to establish that a reduction in sentence is appropriate in light of the § 3553(a) factors, the Court will deny the motion for compassionate release.

---

[5] In addition, Mr. Sides states that he wishes to be placed in a private nursing home should he be released from prison.  Docket No. 63 at 10; Docket No. 73 at 6.  Although Mr. Sides is correct that the government does not challenge his release plan, *id.* at 2, his release plan is nevertheless inadequate.  Mr. Sides does not set forth which private nursing home he wishes to be placed in or indicate that a private nursing home has agreed to house Mr. Sides.  And, given Mr. Sides' acknowledgment of the risk that he may commit crimes again, however unlikely, *see* Docket No. 63 at 11; Docket No. 73 at 6, the Court is troubled by the suggestion of placing Mr. Sides in a nursing home alongside many elderly or otherwise vulnerable individuals.

## III. CONCLUSION

ORDERED that defendant's Motion for Compassionate Release [Docket No. 63] is **DENIED**. It is further

ORDERED that the letter to the Court [Docket No. 59], construed as a *pro se* motion for compassionate release, is **DENIED** as moot.

DATED August 10, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge